## In re AIR CRASH AT CHARLOTTE, NORTH CAROLINA ON JULY 2, 1994.

### No. 3:95–1041–17.
### MDL 1041.

United States District Court,
D. South Carolina,
Columbia Division.

Feb. 21, 1997.

James Wilton Orr, Bowers, Orr & Dougall, Columbia, SC, Lawrence Edward Richter, Jr., The Richter Firm, P.A., Mt. Pleasant, SC, William Parham Simpson, Haynsworth, Marion, McKay & Guerard, Columbia, SC, Michael L. Baum, Kananack, Murgatroyd, Baum & Hedlund, Los Angeles, CA, Frank H. Granito, Speiser, Krause, Madole & Nolan, New York City, Marc Moller, Lori B. Lasson, Kreindler & Kreindler, New York City, David E. Rapoport, Rapoport & Kupets Law Offices, Rosemont, IL, for Plaintiff's Steering Committee.

Mark A. Dombroff, Tom Almy, Dombroff and Gilmore, Washington, DC, Edward Wade Mullins, Jr., Nelson, Mullins, Riley & Scarborough, Columbia, SC, Richard B. Watson, Nelson, Mullins, Riley & Scarborough, Charleston, SC, for Defendant USAir.

Patrick E. Bradley, Douglas Coleman, United States Department of Justice, Torts Branch, Civil Division, Washington DC, Raymond E. Clark, Assistant United States Attorney, Columbia, SC, for Defendant U.S.

## ORDER GRANTING MOTIONS TO CONDUCT DEPOSITIONS DURING TRIAL

JOSEPH F. ANDERSON, Jr., District Judge.

Presently before the court is plaintiffs' motion to take the depositions of two persons who are not parties or previously named witnesses in this multidistrict litigation which is presently in its fifth week of trial. Due to the circumstances discussed below, the court will grant this extraordinary request.

On the morning of February 20, 1997, the court was contacted by the Plaintiffs' Steering Committee requesting an *in camera* discussion relating to "critical and urgent matters of impeachment of witnesses." As this court has done previously with both parties, the court granted this request. It quickly became obvious to the court that plaintiffs

were raising two significant issues: first, matters related to the impeachment of a surprise impeachment witness named by defendant (Captain Edward Davidson); and second, interrelated matters of witness intimidation that might possibly involve this impeachment witness as well as a much larger group, the Air Line Pilot's Association ("ALPA") and possibly others.

The court found these to be very significant allegations which, while appropriately brought to the court's attention through an *in camera* discussion, could not be properly addressed without allowing the opposing party to provide input. The court, therefore, advised plaintiffs that if they desired to pursue the matter, they should raise it in court outside of the jury's presence, providing any supporting materials to all parties and making those materials a part of the court record at that time. Plaintiffs did so prior to the lunch break on February 20, 1997.

After a thorough review of the plaintiffs' submission which consisted primarily of electronic bulletin board communications to and regarding plaintiffs' expert witness, Captain Patrick Clyne, the court agreed that the content was reasonably susceptible to an inference that serious threats were being made to Captain Clyne.[1] Notably, the electronic bulletin board at issue was one accessible only by ALPA union members and the vast majority of the communications were written to or by a member of the Executive Committee of the local union to which plaintiffs' expert belongs.[2] The communications indicate that this official, "Rich Siakel," was the person who initiated an earlier censure of Captain Clyne for allegedly violating the union's ethics code by testifying as a paid expert witness in this trial. Siakel discusses a proposal to bar Clyne from the union, but expressly states that he will delay filing until the present trial ends because "plaintiff's attorneys have already attempted [to] attack the defense with 'ALPA's' (actually mine) attempt to censure Clyne."[3]

In an early communication, Siakel indicates that he has communicated with "our V.P. of Flight Operations," who, from the title and context, may be a management official with Northwest Airlines. Other communications relating to stripping Captain Clyne of awards previously given him by the union because he has testified in the present trial, are authored by or directed to "Dick Duxbury." A number by various authors refer to defendant's proposed impeachment witness, Captain Edward Davidson. In addition, a February 13, 1997 communication by Siakel refers to review of "hundreds of pages of [Clyne's] testimony."[4]

In light of the serious concerns raised by these communications, the court conducted a brief *voir dire* of Captain Edward Davidson.

1. The threats consist of indications that Clyne may be barred from the union or stripped of awards previously given by the union in retaliation for providing testimony in the present case. The former might effectively end Captain Clyne's ability to retain his pilot's slot with Northwest Airlines and his ability to obtain employment with another airline. Other statements could be construed as threatening physical harm or may be no more than hot hyperbole in extremely poor taste. Certainly, the comments suggest an organized effort by some key union officials and others to deny Captain Clyne various benefits normally accorded other airline pilots.

2. In a January 31, 1997 communication, he identifies himself as the "Chairman of Northwest Council 001 in Minneapolis."

3. While this is a somewhat misleading statement of the manner in which this issue arose, there is no particular reason to believe Siakel would be aware of the specifics of trial proceedings.

4. It is not clear whether the "testimony" referred to is deposition testimony or trial testimony. While either is public information, the particular manner in which either flowed to Siakel raises areas for further inquiry. That is, the only copies of the deposition testimony the court is aware of which are likely to have traveled to Siakel were copies given by defense counsel to Captain Clyne's employer, Northwest Airlines (apparently at Northwest's request) or experts hired by counsel. As to trial transcripts, counsel for both parties indicate that they have not given copies of the transcripts to Northwest or anyone else other than defense counsel's disclosure of substantial portions of Clyne's testimony to Davidson. When questioned, Davidson indicated he had shared only limited portions of the transcripts with other Northwest pilots and a few ALPA members. Who provided the transcripts and the purpose for which they were provided might, therefore, lead to information regarding who might be involved in any attempt to dissuade Captain Clyne from testifying.

This *voir dire* had two purposes: first, to determine if this witness was connected in any way with or potentially biased by any activity that might be construed as an attempt to prevent Captain Clyne from testifying; and, second, to determine if there were grounds to allow plaintiffs to conduct depositions of certain other persons apparently involved in the electronic bulletin board communications or other actions which might be construed as threatening Captain Clyne as retaliation for his testimony.

Captain Davidson's brief testimony before the court did not link him directly to the electronic bulletin board communications although it did provide background information regarding certain of the correspondents referenced above. The court felt his testimony sufficient to justify fuller exploration by plaintiffs in a court-monitored deposition to be conducted that evening.[5] Further, in this court's view, the testimony coupled with the electronic bulletin board communications and the evidence of the earlier censure justifies deposition of several persons named in those communications, particularly, those persons identified as "Rich Siakel," "Dick Duxbury," and "Tim Averett" (identified as an ALPA member with USAir).

By allowing these depositions to go forward, this court is not suggesting any prior determination that any evidence obtained in these depositions will be allowed to be presented at this trial. Indeed, it is possible that even if there has been improper or illegal action directed towards Captain Clyne, it may not be connected in any way with any party to or witness in this case. Nonetheless, the seriousness of these allegations, with the support provided to date, justifies immediate exploration of any possible involvement by any party or witness in this case.

WHEREFORE, it is ordered that plaintiffs may take the immediate deposition of those persons identified in the ALPA electronic bulletin board communications as "Rich Siakel," "Dick Duxbury," and "Tim Averett" (identified as an ALPA member with USAir). Defendant shall provide plaintiffs with the full name, business and home addresses of Tim Averett, if known. The court will not authorize further depositions at this time but may do so if justified by these depositions or other evidence which comes to light. The court will not delay trial to allow these depositions to go forward but will authorize that they be conducted on weekends.

IT IS SO ORDERED.

---

5. Magistrate Judge Joseph McCrorey was ap-  pointed to preside at that deposition.